IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRO-SPEC PAINTING, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 16-2373 (JBS/AMD) |
| THE SHERWIN-WILLIAMS COMPANY, | **OPINION** |
| Defendant. | |

APPEARANCES:

Paul A. Bucco, Esq.
Davis Bucco
10 E. 6th Avenue, Suite 100
Conshohocken, PA 19428
     Attorney for Plaintiff

Scott I. Unger, Esq.
Bianca Alexis Roberto, Esq.
Stark & Stark, PC
PO Box 5315
Princeton, NJ 08543
     Attorneys for Defendant

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This matter comes before the Court on a motion for judgment on the pleadings by Defendant the Sherwin-Williams Company. [Docket Item 19.] In this action, Plaintiff Pro-Spec Painting, Inc., asserts claims for breach of contract (Count I), negligence (Count II), and breach of express and implied warranty (Count III), arising from the sale of allegedly

defective primer by Defendant to Plaintiff. [Amended Complaint, Docket Item 5.] Plaintiff is a painting company that contracted with the East Windsor Township Municipal Utilities Authority to paint a water tower. [Am. Compl. at ¶ 3.] Pursuant to Plaintiff's agreement with the Municipal Utilities Authority ("MUA"), Plaintiff used products manufactured and sold by Defendant to prepare the water tower for painting, including Macropoxy 920 Pre-Prime intermediate coating ("MP 920"). [Id. at ¶¶ 4-9.] It is this coating which Plaintiff alleges was defective. [Id. at ¶¶ 10-21.] Plaintiff alleges damages stemming from its need to remove the coating from the water tower and states that it incurred costs in the amount of $196,050.91 "representing materials and labor expended" by Plaintiff to remove the coating, and it expects to incur additional costs to complete the removal and replacement of the coating. [Id. at ¶¶ 23, 26.]

In the instant motion, Defendants assert that they are entitled to judgment on the pleadings as to Plaintiff's claims of breach of contract, negligence, and breach of express and implied warranties. Defendant states that, given the language of the controlling and valid express warranty, Count I is duplicative of Count III and should therefore be dismissed; that parts of Count III were validly disclaimed by the express warranty and should be dismissed for that reason; that Count II

2

cannot be sustained under New Jersey law; and that the express warranty limits the damages in this case. Plaintiff argues that the express warranty is not controlling and should not mandate dismissal of Count I or parts of Count III.

For the reasons discussed below, the Court will grant Defendant's motion for judgment on the pleadings.

## II. BACKGROUND

### A. Facts

The Court accepts as true the following facts from Plaintiff's Amended Complaint and the exhibits thereto for purposes of Defendant's motion for judgment on the pleadings.

Plaintiff Pro-Spec Painting, Inc., is a business corporation located in New Jersey that in 2014 entered into a contract with the Municipal Utilities Authority of East Windsor Township to paint a large water tower. [Am. Compl. ¶¶ 1, 3.] Defendant Sherwin-Williams is a corporation located in Ohio that, primarily, manufactures paint and related products. [Id. at ¶ 2.] The contract Plaintiff signed with the MUA included Project Specifications for how Plaintiff was to go about painting the water tower; these specifications included, inter alia, that Plaintiff was to use Defendant's MP 920 Pre-Prime intermediate coating as a primer on the water tower. [Id. at ¶ 4.]

Plaintiff bought MP 920 from Defendant on or around November 14, 2014. [Docket Item 5-3 at 6-7.] When Defendant delivered the product to Plaintiff, Plaintiff noticed that the stated shelf-life expiration date for the MP 920 was only a few days away. [Am. Compl. at ¶¶ 5, 6.] Plaintiff contacted Defendant to complain about the "out-of-date material"; in response, Defendant sent a letter on December 17, 2014 "to certify that Sherwin-Williams product(s) listed below is acceptable for use until March 10, 2015: Macropoxy 920 B58V10; Batch XM3443SL." [Docket Item 5-1 at 2.] This was the batch at issue, and Defendant's letter effectively extended the shelf-life expiration date until March of 2015.

Plaintiff subsequently applied the MP 920 to the water tower in mid-December of 2014 and realized shortly thereafter that the coating "failed to harden sufficiently" to allow Plaintiff to apply the final coating as required in its contract with the MUA. [Am. Compl. ¶¶ 9, 10.]

Plaintiff contacted Defendant about the coating's failure to harden adequately; Defendant came to the water tower, performed testing on the coating, and concluded that "the application was not defective" and that Plaintiff could continue the project and apply the final coating. [Id. at ¶¶ 11-13.] Plaintiff, apparently disagreeing with that conclusion, performed its own testing and concluded that the coating A) did

not cure sufficiently and B) would not allow for the final coating to be applied atop it. [Id. at ¶¶ 14-15.] When Plaintiff informed Defendant of its results, Defendant provided advice to Plaintiff about "various procedures recommended by Sherwin-Williams to remove [an] oily film from the defective coatings after the 920 PrePrime was in place." [Id. at ¶¶ 16-17.] During this process, Plaintiff showed Defendant's representatives at the water tower that workers could scrape "the waxy film from the tank's surface with a mild pressure of workers' fingernails demonstrating the ease of removal of the 920 PrePrime from the tank substrate with either water or solvent." [Id. at ¶¶ 18-19.] Defendant then directed Plaintiff to remove the coating from the water tower. [Id. at ¶ 20.]

Plaintiff then removed the coating from the water tower; it estimated the costs expended in the removal at $196,050.91 "representing materials and labor" and expected to incur additional costs to complete the removal and replacement of the coating. [Id. at ¶¶ 22, 23, 26.]

**B. Claims and procedural history**

Plaintiff's Amended Complaint states three claims.[1] It states as Count I a claim for "breach of contract," namely, that Plaintiff issued Defendant "written purchase orders" wherein

---

[1] This Court exercises diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

Defendant agreed to provide MP 920 to Plaintiff for the water tower at a cost to Plaintiff of $18,495.00. [Am. Compl. ¶ 30.] It continues: "Pursuant to the written Contract between Pro-Spec and Sherwin-Williams, Sherwin-Williams owed a duty to Pro-Spec to provide non-defective, suitable materials as the specified 920 PrePrime product to be applied by Pro-Spec to the Standpipe." [Id. at ¶ 31.] It alleges that Defendant's provision of allegedly defective MP 920 constitutes a material breach of the written contract. [Id. at ¶ 34.]

In Count II, Plaintiff pleads a claim for negligence, stating that Defendant owed Plaintiff a duty "to provide suitable materials in a proper and non-negligent manner, and to provide Pro-Spec with correct advice regarding the standards for application of that product," and that Defendant breached that duty by failing to provide Plaintiff with "properly manufactured 920 PrePrime" and by "direct[ing] Plaintiff to apply final coats of finish paint over the defective 920 PrePrime[.]" [Id. at ¶¶ 37-38.]

In Count III, Plaintiff alleges "Breach of Warranty (Express and Implied)." (Id. at 7.) Plaintiff claims that Defendant "warranted the 920 PrePrime would be free of manufacturing defects in accord with applicable Sherwin-Williams quality control procedures[,]" and attached a "true and correct copy of Sherwin-Williams warranty" to the Complaint as Exhibit

D. [Id. at ¶ 42; Docket Item 5-4.] Plaintiff states that
Defendant "expressly warranted the 920 PrePrime would be free of
manufacturing defects" and "impliedly warranted the 920 PrePrime
would be suitable for its intended purpose, to wit, application
to the standpipe"; however, it was defective and caused the
damages incurred by Plaintiff. [Am. Compl. ¶¶ 44-46.]

The Sherwin-Williams warranty Plaintiff attached is a
three-page document called "Application Bulletin and Product
Information. [Docket Item 5-4 at 2-4.] At the bottom of the
second and third pages are identical sections labeled "Warranty"
stating as follows:

> The Sherwin-Williams Company warrants our products to
> be free of manufacturing defects in accord with
> applicable Sherwin-Williams quality control
> procedures. Liability for products proven defective,
> if any, is limited to replacement of the defective
> product or the refund of the purchase price paid for
> the defective product as determined by Sherwin-
> Williams. NO OTHER WARRANTY OR GUARANTEE OF ANY KIND
> IS MADE BY SHERWIN-WILLIAMS, EXPRESSED OR IMPLIED,
> STATUTORY, BY OPERATION OF LAW OR OTHERWISE, INCLUDING
> MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

[Id. at 3, 4.] The text is slightly smaller than other text on
the pages, but not significantly so, and is legible. The heading
"Warranty" is, on each page, bolded, capitalized, and set off in
a shaded box. [Id.]

In its Amended Answer [Docket Item 15], Defendant admitted
the allegations in Paragraph 42 of the Amended Complaint,
namely, that Defendant "warranted the 920 PrePrime would be free

of manufacturing defects in accord with applicable Sherwin-Williams quality control procedures" and further admitted that the warranty at issue was the one contained in Exhibit D to the Amended Complaint [Docket Item 5-4] and that its full language was as quoted above. [Docket Item 10 at ¶ 42.]

Shortly thereafter, Defendant filed the present Motion for Judgment on the Pleadings. [Docket Item 19.] Plaintiff filed a Response in Opposition [Docket Item 27] and Defendant filed a reply brief [Docket Item 29]. The motion is decided without oral argument pursuant to Rule 78, Fed. R. Civ. P.

## III. STANDARD OF REVIEW

A defendant may move to dismiss a complaint before or after filing an answer.  Fed. R. Civ. P. 12(b)(6) and (c); see also Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 675 (D.N.J. 1996).  A motion made before an answer is filed is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  See Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c).").

The differences between Rules 12(b)(6) and 12(c) are purely procedural, and the pleading standards of Rule 12(b)(6) are

applied for both.  Turbe v. Gov't of the Virgin Islands, 938
F.2d 427, 428 (3d Cir. 1991).  Thus, the Court must "accept all
factual allegations as true, construe the complaint in the light
most favorable to the plaintiff, and determine whether, under
any reasonable reading of the complaint, the plaintiff may be
entitled to relief."  Fleisher v. Standard Ins. Co., 679 F.3d
116, 120 (3d Cir. 2012).  The complaint must contain "sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (internal quotation marks omitted).  "A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Id.

As applied to the present motion, the Court accepts the
factual content of the Amended Complaint as true and determines
whether Defendant is entitled to judgment on the pleadings.


**IV.  DISCUSSION**

Defendant argues, first, that New Jersey's Uniform
Commercial Code applies to the dispute because Plaintiff and
Defendant are merchants for the purchase and sale of goods.
[Docket Item 19-1 at 8.] Because they are under the ambit of the
U.C.C>, N.J.S.A. § 12A:2-104(1) and (3), the Economic Loss Rule
described in Spring Motors Distribution v. Ford Motor Co., 98

N.J. 555 (1985), dictates that Plaintiff's claim for negligence (Count II) must be dismissed. [Id.] Plaintiff does not dispute this argument in its Response. [Docket Item 27 at 5-10.]

Second, Defendant argues that Plaintiff's breach of contract (Count I) and breach of warranty (Count III) claims A) overlap; and B) are controlled by the terms of the express warranty, effectively barring the common-law breach of contract claim in Count I. [Docket Item 19-1 at 14.]

The Court will address these arguments in turn.

## A. Negligence

Defendant argues that the relationship between it and Plaintiff relating to its sale of MP 920 is governed by the New Jersey U.C.C., N.J.S.A. § 12A:2-104(1) and (3). Both Plaintiff and Defendant are "merchants" as that term is defined in the U.C.C., and they were in privity of contract with each other with regard to the purchase order Plaintiff placed with Defendant on November 14, 2014. [Docket Item 19-1 at 8-9.]

Spring Motors, 98 N.J., supra, at 561, established the rule that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence." The economic loss doctrine may not apply to claims that a defective product caused personal injury

or damage to other property, see Alloway v. Gen. Marine. Indus., L.P., 149 N.J. 620, 632 (1997), but does "bar[] claims for indirect, consequential damages, such as lost profits and loss of customer goodwill." AgroLabs, Inc. v. Innovative Molding, Inc., No. 2:13-6169, 2014 WL 3535560 at *4 (D.N.J. July 16, 2014). "Costs of repair" are one type of damages that fall into the category of "economic loss" under Spring Motors. Alloway, 149 N.J., supra, at 627. As the New Jersey Supreme Court has stated, "if the essence of a claim was that there was something wrong with the product itself, the buyer's remedies were found in the U.C.C. because the claim was found, fundamentally, in the contract principles embedded there." Dean v. Barrett Homes, Inc., 204 N.J. 286, 296 (2010).

Under these precedents, it is clear (and Plaintiff does not dispute) that its negligence claim is barred. Plaintiff's essential claim for damages here is for the costs it expended to repair the coating on the water tower; the purported reason for this was Defendant's provision of an allegedly defective product. Such a claim is governed by the U.C.C. and cannot be alleged as a negligence claim. Accordingly, the Court will grant Defendant's Motion as to Count II and dismiss Count II with prejudice.

**B. Breach of Contract and Breach of Warranty**

**1. Breach of Contract**

Defendant argues that the claims for breach of contract and breach of warranty overlap, and that the breach of contract claim must be dismissed because the U.C.C. provides the "exclusive remedy for transactions involving the sale of goods." [Docket Item 19-1 at 14.] See Alloway, supra, 149 N.J. at 275; D'Angelo v. Miller Yacht Sales, 619 A.2d 689, 691 (N.J. App. Div. 1993).

In essence, Defendant argues, the "written contract" Plaintiff alleges in Count I at ¶ 34 of the Amended Complaint Defendant breached by providing Plaintiff with an allegedly defective product, was simply the November 14, purchase order, which was (Defendant alleges) "subject to the admitted SW 'Warranty.'" [Docket Item 19-1 at 15 n.14.] Plaintiff does not allege that Defendant breached any contract term, other than that breached by allegedly supplying a defective product. Since this is the same breach as the breach of the express warranty, Count I is duplicative and should be dismissed. [Docket Item 29 at 4.]

In response, Plaintiff argues that the assurance letter from Defendant on December 17, 2014 extending the shelf-life expiration date of the MP 920, should be admitted as parol

evidence to interpret the contract between Plaintiff and Defendant, in order to conclude that the letter "supplements the written warranty" or "supersedes the warranty." [Docket Item 27 at 7.] Plaintiff also argues that, because the written contract at issue is the November purchase order and because the purchase order itself "does not contain any warranty language[,]" "Sherwin-Williams is attempting to add warranty language" "to the contract." [Id.]

Defendant replies, and the Court agrees, that the Amended Complaint at ¶¶ 42-47 alleges that Plaintiff and Defendant were bound by Defendant's express warranty; Defendant's admission of the same in the Answer renders this a conclusive judicial admission. See Friedmann v. U.S., 107 F. Supp. 2d 502, 511 (D.N.J. 2000).

Furthermore, the Project Specifications both mandated the use of MP 920 and directed the contractor who ultimately won the contract to submit the "manufacturer's technical data on product and recommended use[,] . . . [and] application instructions[.]" [Docket Item 10-2 at 40, 36.] These Project Specifications thus drew the contractor's attention to the Application Bulletin and Product Information sheets wherein the express warranty was located and formed the basis of Plaintiff's contract with the MUA, which prompted Plaintiff to buy the MP 920 from Defendant. The Court is able to conclude from the face of the pleadings

that Plaintiff knew of and had reason to know of Defendant's express warranty.

Plaintiff is the party who attached the express warranty to the Amended Complaint and who alleged a breach thereof. [Am. Compl. ¶¶ 40-47.] Plaintiff cannot bind Defendant and seek to hold it liable for a breach of the express warranty and claim at the same time that the express warranty was not binding.

As to Plaintiff's argument that the December letter from Defendant "superseded" the express warranty, the Court finds that argument unpersuasive. The letter did not by its terms "assure" Plaintiff that the MP 920 was "suitable" for the intended use, but rather "certif[ied]" that the MP 920 was "acceptable for use" until March 15, 2015. [Am. Compl. Ex. A.] It is clear from the face of the pleadings and the exhibits thereto that the December letter simply operated as Defendant's certification of an extended expiration date for the batch of MP 920 at issue.[2] It cannot be fairly said to "supplement" or "supersede" the clear, specific, and conspicuous express warranty, especially where it did not contain language like

---

[2] This interaction resembles the process described in the U.C.C. as a demand for adequate assurance of due performance. N.J.S.A. § 12A:2-609. As Defendant states, "[n]othing in § 12A:2-609 suggests that a seller's provision of such assurance constitutes a new general warranty or supersedes a valid warranty provided at the time of contracting." [Docket Item 29 at 5.] Plaintiff has not pointed to any precedent so holding, and the Court is not aware of any such precedent.

"guarantee," "warranty," or similar, even taking the fact in the light most favorable to Plaintiff.

The Court will dismiss Count I as duplicative of Count III because Plaintiff alleges only that Defendant breached the contract (i.e., the purchase order) by providing a defective product, which is also the basis for the breach of warranty claim in Count III. However, such dismissal shall be without prejudice, should Plaintiff seek to amend the complaint further to allege a breach of some other contractual term.

### 2. Breach of Warranty

Defendant also argues that the claims under Count III for breach of implied warranties should be dismissed. [Docket Item 19-1 at 16-17.] In Count III, Plaintiff alleges that Defendant breached its express warranty of being free of manufacturing defects and its implied warranty of suitability to be applied to the water tower. [Am. Compl. ¶¶ 44-46.] Defendant's express warranty, located in Exhibit D of the Amended Complaint, and admitted to by Defendant, is the controlling warranty, Defendant argues, under N.J.S.A. § 12A:2-316. [Docket Item 19-1 at 16.] The express warranty disclaimed all implied warranties, including an implied warranty of fitness or an implied warranty of merchantability. [Am. Compl. Ex. D.] Accordingly, Plaintiff's claim under Count III of breaches of implied warranties [Am.

Compl. ¶¶ 45, 46] are not cognizable, Defendant argues. [Docket Item 19-1 at 16.]

Under the U.C.C., "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." N.J.S.A. § 12A:2-316(2).

The Court finds that Defendant's express warranty specifically and conspicuously disclaimed both an implied warranty of merchantability and an implied warranty of fitness. The warranty was clear, specific, and conspicuous within the meaning of the U.C.C. where it stated in capital letters: "NO OTHER WARRANTY OR GUARANTEE OF ANY KIND IS MADE BY SHERWIN-WILLIAMS, EXPRESSED OR IMPLIED, STATUTORY, BY OPERATION OF LAW OR OTHERWISE, INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." [Am. Compl. Ex. D.] Plaintiff does not argue otherwise in its Response, no argue that an exception within § 12A:2-316 (e.g., unconscionability) applies. [Docket Item 27.] Accordingly, the claims in Count III for breach of implied warranties of fitness and merchantability are dismissed with prejudice.

### 3. Other arguments

In the alternative, Plaintiff argues that Defendant's provision of MP 920 that was past or nearly past its expiration date constituted "a material breach" of the contract, causing "the warranty to fail of its essential purpose because Pro-Spec simply never received what it bargained for in purchasing the material." [Docket Item 27 at 9.] Plaintiff cites <u>Argabright v. Rheem Mfg. Co.</u>, 201 F. Supp. 3d 578 (D.N.J. 2016), for the proposition that the remedy was inadequate or "fail[ed] of its essential purpose" when the buyer was "limited solely to repair or replacement of defective parts and the seller failed to replace or repair in a reasonably prompt and non-negligent manner." [Docket item 27 at 9.]

This doctrine is discussed in <u>Argabright</u>, which described it in this manner: "a remedy fails of its essential purpose if, after numerous attempts to repair, the product does not operate free of defects." 201 F. Supp. 3d, <u>supra</u>, at 594 (internal citations omitted). But there, as here, "[s]imilar facts are not present in this case and do not make out a claim that the [w]arranty failed of its essential purpose. <u>Id.</u> Plaintiff does not allege that Defendant failed to abide by the remedy described in the express warranty; it merely alleges that Defendant provided Plaintiff with a defective product in breach

of the warranty. The "failure of remedy" doctrine is not applicable, despite Plaintiff's statement that "it simply never received what it bargained for in purchasing the material." Indeed, Plaintiff is simply restating its allegation that Defendant breached the express warranty by providing it with defective MP 920 and not the non-defective MP 920 it bargained for. The "failure of remedy" doctrine is inapposite.

In addition, Plaintiff states that the Court is being petitioned by Defendant to use its equitable powers to dismiss Count I, limit Count III to breach of the express warranty, and/or limit damages as provided for by the express warranty, and that the Court should decline to do so because Defendant, having delivered a defective product, "has unclean hands." [Docket Item 27 at 9-10.]

The Court disagrees, however, that Defendant's motion under Fed. R. Civ. P. 12(c) sounds in equity. Defendant has asked the Court to assess the pleadings and decide whether to grant judgment to Defendant on these issues as a matter of law. The allegation that Defendant supplied a defective product hardly renders this an equitable question or establishes that Defendant had unclean hands.

### 4. Limitation on Damages

Defendant also argues that the express warranty limits the remedy available "to replacement of the defective product or the

refund of the purchase price paid for the defective product as determined by Sherwin-Williams" when a product is "proven defective," i.e., "to [not] be free of manufacturing defects in accord with applicable Sherwin-Williams quality control procedures." [Am. Compl. Ex. D.] The U.C.C. provides that "[c]onsequential damages may be limited or excluded" subject to certain restrictions. N.J.S.A. § 12A:2-719.

Defendant argues that Plaintiff accepted the terms of the warranty inasmuch as the Project Specifications called for MP 920 by name[3] and referred Plaintiff to the Product Information and Application Bulletin sheets by mandating that the contractor "submit" the "Coating manufacturer's technical data on product and recommended use" and "application instructions" [Docket Item 10-2 at 36], both of which contained the express warranty. [Docket Item 19-1 at 16-17.] Defendant asserts that Plaintiff acknowledged being bound by the warranty in the Amended Complaint, and Defendant's answer admitting the allegations in Paragraph 42 of the Amended Complaint had the effect of rendering that acknowledgement a binding judicial admission. Accordingly, Plaintiff's claim for damages beyond those provided for in the express warranty is barred. [Id. at 17.]

---

[3] The Project Specifications are attached as Exhibit B to Defendant's Answer. They refer to MP 920 specifically and require its use. [Docket Item 10-2 at 40.]

For the reasons described above, the Court finds that
Plaintiff knew of the express warranty and admitted in the
Amended Complaint that it applied to this transaction. [Am.
Compl. ¶¶ 40-47.] The express warranty limits the damages
available to Plaintiff for Defendant's provision of a
"defective" product to "replacement of the defective product or
the refund of the purchase price paid for the defective product
as determined by Sherwin-Williams." [Docket Item 5-4 at 3, 4.]
Plaintiff does not submit any reason to find that the limitation
on damages in the express warranty is invalid, and the Court
cannot discern any such reason.

Accordingly, the Court finds that any damages in this case
shall be limited to those described in the express warranty,
i.e., the replacement cost or the refund of the purchase price.

## V.    CONCLUSION

For the reasons discussed above, the Court concludes that
the express warranty and its provisions, attached as Exhibit D
to the Amended Complaint, were valid and applicable to the
November 14, 2014 contract for the sale of MP 920 by Defendant
to Plaintiff, both of whom are merchants under the U.C.C.
Accordingly, the Court will grant Defendant's motion for
judgment on the pleadings. Because the transaction was governed
by the express warranty, Count I for common law breach of

contract is duplicative of Count III (breach of warranties) and Count I will be dismissed. However, such dismissal shall be without prejudice, should Plaintiff seek to amend the complaint further to allege a breach of some other contractual term. Count II (negligence) shall be dismissed with prejudice under the Economic Loss Doctrine. Count III's claim for breach of implied warranties shall be dismissed with prejudice, and the case shall proceed upon Count III's claim for breach of express warranty. An accompanying Order will be entered.


**May 12, 2017**                           **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge